**Exhibit A:** Mr. Shannon's late-night text message (3/27/2025, 00:16 hours)



**Exhibit B:** Letter from Plaintiffs to ACS (3/31/2025)



Re: ████████ **Family – Case** ████████ **– Report Date: 03/27/2025**

Mon, Mar 31, 2025 at 2:49 AM

To: Peninna.oren@acs.nyc.gov
Cc: Michael.Shannon@acs.nyc.gov, Eden.Hauslaib@acs.nyc.gov, Suchet.Rao@acs.nyc.gov,
Jacqueline.Penn@acs.nyc.gov, tcoles@cfmy.org, rhuff@advocate.nyc.gov



March 31, 2025

Ms. Peninna Oren
**ACS** Borough Chief for Manhattan
150 William Street
New York, NY 10038

Dear Ms. Oren,

We understand and respect ACS's statutory obligation to ensure the safety and well-being of our surviving three-year-old son. However, we are writing in the immediate aftermath of the sudden and tragic loss of our three-month-old infant, during a time of profound grief for our entire family. In light of this, we feel it is necessary to raise several urgent concerns regarding continued family retraumatization stemming directly from ACS misconduct and to request clarification regarding the conduct and direction of the current investigation.

**Request for Information**

Pursuant to NY Social Services Law § 422(4)(A)(e), which permits access to records for subjects of a report, we are formally requesting electronic copies of the following:

(1) The initial report filed with the State Central Register, including the specific allegations
(2) The preliminary seven-day assessment report
(3) Written clarification of ACS policies regarding the frequency of home visits during an investigation—particularly the verbal indication that visits are required every 14 days
(4) The names and roles of all ACS staff members who will continue to be involved in this case

**Concerns Regarding Caseworker Conduct and Trauma-Informed Practice**

As grieving parents navigating the devastating loss of our infant, we have observed several issues in the handling of this matter that require urgent attention from ACS leadership:

• **Apparent Gaps in Child Development and Pediatric Knowledge**: During interviews, the assigned caseworker and supervisor appeared unfamiliar with basic developmental and medical information. For example, they questioned whether it was appropriate for a three-month-old to be seated in a high chair and did not seem to understand typical conditions such as neonatal jaundice or normal infant bowel patterns. These gaps raise concerns about their preparedness to assess child welfare effectively.

• **Developmentally Inappropriate Interviewing**: Our surviving three-year-old, who is clearly in emotional distress, was asked if he was "happy" hours after losing his younger sibling. As a child psychiatrist, I found this approach deeply troubling and contrary to trauma-informed principles. Such questioning risks compounding the trauma he is already experiencing.

• **Lack of Trauma-Informed Support**: Despite ACS's own published guidelines and commitment to trauma-informed

**Exhibit B:** Letter from Plaintiffs to ACS (3/31/2025)

care, no grief support services have been offered to our family, nor have any resources been provided to assist our child. Particularly concerning was a 12:16 AM text message requesting a "brief" second visit the same night our infant passed after we had already met for nearly three hours. We responded early the following morning and met for several additional hours the next day while attempting to make funeral arrangements.

• **Professional Demeanor**: The tone and affect displayed by both the caseworker and supervisor at various points appeared distant and uncomfortable. This made communication more difficult at a time when clarity and compassion are essential.

### Requests in Light of These Concerns

We are committed to full cooperation with ACS, but we respectfully request the following:

• Involvement of professionals with specific experience in: (1) Early childhood development and pediatric health; (2) Trauma-informed interviewing of young children; and (3) Supporting families in acute grief

• That any further interviews with our son be: (1) Conducted only by professionals trained in trauma-informed practice; (2) Limited in frequency and duration; (3) Attended by a qualified child psychiatrist or psychologist provided by ACS; and (4) Recorded to ensure adherence to best practices

• That all communication from ACS occur during reasonable daytime hours, with sufficient notice of at least twenty-four (24) hours prior to proposed meetings

• That we receive immediate access to grief and mental health support resources for both parents and our son

### Medical and Developmental Context

On March 28th 2025, autopsy was performed by Dr. Bahadir Yildiz, who personally reassured us that he found no evidence of injury and had already informed colleagues that he found no indication of maltreatment in connection with our infant's passing. He further informed us that while some lab studies were sendouts that would take up to 5-6 months to complete, SIDS was very high on his differential.

In order to further support ACS in accurately assessing our remaining child's well-being, we have authorized the release of his medical records and confirmed that our family's pediatrician is available to provide them upon request.

### Family Residence and Travel Plans

We were in New York for a temporary one-week visit at the time of this tragic event. Our primary residence is in Puerto Rico, where both of our children were born and we have deep community ties, extended family, and a supportive school environment for our son. Our concerns have only grown as our living child is unable to sleep at the home of his younger brother's passing

We may need to travel in the coming weeks to host religious and memorial services, and we may also decide to continue with pre-planned, annual summer travel to help restore a sense of routine and emotional safety for our child. All decisions about travel will be made with his emotional needs as our highest priority. We remain fully committed to cooperating with ACS and will maintain open communication regarding any travel plans.

Accordingly, we request clarification on ACS protocols for families who may need to travel during an active investigation, especially when such travel directly supports the child's emotional recovery.

### Conclusion and Request for Discussion

We are eager to work collaboratively with ACS to ensure the safety and emotional well-being of our son while also minimizing further distress to our family. We believe that with the appropriate expertise and sensitivity, this investigation can proceed in a manner that supports rather than harms those involved.

Please contact us within three business days to confirm receipt of this letter and to schedule a phone call to discuss next steps. We can also be reached at ▮▮▮▮▮▮▮▮▮

In the meantime, we respectfully request that ACS review the conduct of this investigation to date and provide written clarification regarding the qualifications and training of staff assigned to cases involving infant death and childhood trauma.

**Exhibit B:** Letter from Plaintiffs to ACS (3/31/2025)

Thank you for your attention to these urgent matters.

Sincerely,



cc:

Mr. Micheal Shannon, ACS Caseworker Michael.Shannon@acs.nyc.gov

Mr. Eden Hauslaib, ACS Chief Accountability Officer

Eden.Hauslaib@acs.nyc.gov

Dr. Buchet Rao, MD, ACS Medical Director Psychiatry and Behavioral Health

Suchet.Rao@acs.nyc.gov

Dr. Jacqueline Penn, DO, ACS Assistant Director Psychiatry

Jacqueline.Penn@acs.nyc.gov

Ms. Tehra Coles, Center for Family Representation, Executive Director

tcoles@cfrny.org

Mr. Rance Huff, Chief of Staff, NYC Public Advocate's Office

rhuff@advocate.nyc.gov

**Exhibit B:** Letter from Plaintiffs to ACS (3/31/2025)



Re: ████ **Family — Case** ████ **— Report Date: 03/27/2025**

**Oren, Peninna (ACS)** <Peninna.Oren@acs.nyc.gov>                                    Mon, Mar 31, 2025 at 11:50 AM
To: ██ ██ ██ ██
Cc: "Michael.Shannon@acs.nyc.gov" <Michael.Shannon@acs.nyc.gov>, "Hauslaib, Eden (ACS)"
<Eden.Hauslaib@acs.nyc.gov>, "Rao, Suchet S (ACS)" <Suchet.Rao@acs.nyc.gov>, "Penn, Jacqueline (ACS)"
<Jacqueline.Penn@acs.nyc.gov>, "tcoles@cfrny.org" <tcoles@cfrny.org>, "Huff, Rance" <rhuff@advocate.nyc.gov>

Good morning, Dr. ████ and Ms. ████

I am deeply sorry for your loss. Thank you for reaching out. I am writing to acknowledge receipt and to let you know
on behalf of ACS that we are reviewing your email and will be in touch to address. I see that you have cced the
Center for Family Representation. If you have retained counsel, please let us know.

Peninna

Peninna Oren (she/her/hers) | **Borough Chief for Manhattan**

Division of Family Court Legal Services

**NYC Administration for Children's Services**

150 William Street, 5th Floor | New York, NY 10038

T: 212-788-1379

**Exhibit C:** Phone call notes re: Ademola conversation (4/1/2025)



**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)



## Formal Complaint – Unconstitutional Physical Examination of Minor Child Without Consent

5 messages

Wed, Apr 2, 2025 at 4:27 PM

To: jess.dannhauser@acs.nyc.gov, jstrauber@doi.nyc.gov
Cc: tortmail@law.nyc.gov, gethelp@advocate.nyc.gov, law@comptroller.nyc.gov, "Oren, Peninna (ACS)"
<Peninna.oren@acs.nyc.gov>



**April 2, 2025**

**To:**
Commissioner Jess Dannhauser
New York City Administration for Children's Services
150 William Street
New York, NY 10038
jess.dannhauser@acs.nyc.gov

Commissioner Jocelyn Strauber
New York City Department of Investigation
180 Maiden Lane
New York, NY 10038
jstrauber@doi.nyc.gov

**Re: Formal Complaint – Unconstitutional Physical Examination of Minor Child Without Consent
Notification of Filed Notice of Claim Pursuant to GML §50-e**

Dear Commissioners Dannhauser and Strauber:

Please be advised that the undersigned hereby submit this formal complaint concerning egregious misconduct by personnel of the New York City Administration for Children's Services ("ACS") on or about March 27, 2025. On that date, ACS staff conducted an unauthorized physical examination of our three-year-old son during the course of a child protective investigation at our temporary residence. The examination was conducted without prior notice, without informed parental consent, without judicial authorization, and in the absence of any exigent circumstances that could have justified such an intrusive action.

This warrantless and nonconsensual search took place mere hours after the unexpected death of our infant son, ████████ while our family was in a state of acute bereavement. Rather than approaching our family with compassion or professional restraint, ACS investigators carried out what, under both federal and state law, constitutes a constitutionally impermissible search of a minor child at a time of intense psychological trauma for every member of our household.

## FACTUAL BACKGROUND

On the morning of March 27, 2025, ████████████████████ tragically and unexpectedly passed away.
That same day, ACS personnel arrived at the Claimants' temporary residence in New York City to initiate a child

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

protective investigation.

During this period of profound family grief, the ACS supervisor and accompanying caseworker represented to **Ms.** ▮▮▮▮▮ that they merely intended to "say goodbye" to ▮▮▮▮▮ knowing that he was upstairs in a private room with their surviving three-year-old son. ▮▮▮▮▮ permitted this limited interaction solely due to the misrepresentation of their intentions.

Immediately prior to entering the room, the supervisor explicitly instructed the caseworker—within audible range of ▮▮▮▮▮—to "search his body." At no juncture did ACS personnel request or receive consent for such examination, nor did they advise either parent of their intention to conduct a physical inspection of the child. It merits emphasis that the child was not in any danger, was fully clothed, and was in the direct care and supervision of his father.

The caseworker thereupon proceeded to execute a physical examination of the child's body absent legal authority, parental consent, prior notice, or necessity. This conduct was **invasive**, **wholly unjustified**, and constitutes a **clear violation** of established constitutional protections, statutory provisions, and relevant case law.

## LEGAL VIOLATIONS

**Fourth Amendment:** A physical examination of a child by government actors constitutes a "search" under the Fourth Amendment. It requires parental consent, a court order, or an exigent circumstance (see *Tenenbaum v. Williams*, 193 F.3d 581; *Southerland v. City of New York*, 680 F.3d 127).

**Fourteenth Amendment:** The conduct violated our fundamental liberty interests as parents in the care and custody of our child, as recognized in *Santosky v. Kramer* and *Troxel v. Granville*.

**New York State Constitution, Art. I, §12:** This provision provides parallel—and in some contexts greater—protections than the Fourth Amendment.

**New York Family Court Act Violations:**

- §1034(2): No authority for such exams without consent or court order

- §1024: No emergency removal or examination conditions were present

- §1038(c): Exam procedures require judicial oversight absent consent

**Governing Case Law:**

- *Matter of Diane P.*, 110 A.D.2d 354 (2d Dep't 1985): No physical exams without court order in non-emergency situations

- *Yuan v. Rivera*, 48 F. Supp. 3d 335 (S.D.N.Y. 2014): Government may not interpose itself between fit parents and child without legal process

- *Schweitzer v. Crofton*, 935 F. Supp. 2d 527 (E.D.N.Y. 2013): Misrepresentation invalidates consent to physical examination

**Administrative Policies Violated:**

- NYC ACS Manual §§1057–1059 (require consent or court order)

- NYS OCFS CPS Manual (emphasizes respect for family rights and trauma-informed practice)

## RECENT COMMUNICATIONS

On March 28, 2025, at 12:16 a.m., hours after the initial visit, the ACS caseworker sent a text message to Ms. ▮▮▮▮▮ requesting to return to our home that night for a second "brief" meeting. Despite the intrusive timing and our exhaustion, we agreed to a follow-up the next day. That second visit ultimately lasted for several hours—even as we were actively attempting to make funeral arrangements for our deceased infant. The lack of trauma-informed judgment

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

in that interaction further reflected a disturbing indifference to our family's acute psychological and emotional state.

On March 31, 2025, we submitted a written request for information and clarification to Ms. Peninna Oren, Borough Chief of Manhattan ACS. That letter raised multiple concerns about the handling of the investigation, including a lack of trauma-informed practice, gaps in developmental understanding, inappropriate questioning of our surviving son during a period of acute grief, and unprofessional demeanor by assigned staff. That correspondence raised multiple concerns regarding unprofessional conduct and trauma-insensitive practice, but did not address the clearly unlawful and unconstitutional conduct described here, which warrants separate and immediate investigation.

On April 1, 2025, Dr. ███████ spoke by telephone with Ms. Mary Oluwaseun Ademola of ACS. Ms. Ademola stated that, following two visits to the child and our home, "from… on… our end [ACS] there is no concern about abuse or neglect." She also stated that she had spoken with both the assigned caseworker and supervisor. Despite this admission, she informed us that ACS may still conduct additional home visits. She was unable to articulate a clear legal or factual basis for continued involvement—particularly after affirming that ACS had identified no safety concerns. She also offered no explanation for the unlawful search.

This ambiguity is all the more troubling in light of our urgent need to return to our permanent home in Puerto Rico. Our son is unable to sleep in the home where his brother passed, and we are in the process of coordinating funeral and memorial services with extended family. In Puerto Rico, our surviving child has access to his established preschool, church, and family support system. Continued contact by ACS in the absence of findings raises concerns about harassment, retaliation, or unlawful intrusion into family autonomy—particularly after a constitutional violation has already occurred.

## RELIEF AND REMEDIAL ACTION REQUESTED

We respectfully request:

1. A full investigation into the conduct of the supervisor and caseworker;

2. A written explanation of the legal authority, if any, for the search;

3. Confirmation that all records, notes, and communications related to this incident have been preserved in unaltered form;

4. Remedial training for involved ACS staff on constitutional and statutory limits on their authority;

5. Appropriate disciplinary measures based on the seriousness of this violation.

## NOTICE OF LEGAL CLAIM

Please be advised that we have filed a Notice of Claim with the New York City Comptroller pursuant to GML §50-e, preserving our rights to pursue civil remedies against the City, its agencies, and individual employees for constitutional and statutory violations.

We request a written response within fifteen (15) business days. This matter involves serious legal violations during a time of extraordinary grief, and we expect it to be addressed with the seriousness it warrants.

Sincerely,
Dr. ████████████
Ms. ████████████
Parents and Legal Guardians of ███████████

## Enclosures:

- Filed Notice of Claim (GML §50-e)

- March 31, 2025 Letter to Ms. Peninna Oren (ACS Borough Chief, Manhattan)

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)



**New York City Comptroller**
**Brad Lander**

Office of the New York City Comptroller
1 Centre Street
New York, NY 10007

Form Version:    NYC-COMPT-BLA-PI1-F

# Personal Injury Claim Form

Electronically filed claims must be filed within 90 days of the occurrence using the Office of the NYC Comptroller's website. If the claim is not resolved within one (1) year and 90 days of the occurrence, you must start a separate legal action in a court of law before the expiration of this time period to preserve your rights.

**I am filing:**  ⦿ On behalf of myself.

○ On behalf of someone else. If on someone else's behalf, please provide the following information.

Last Name:

First Name: ▉

Relationship to the claimant: SELF

**Claimant Information**

*Last Name: ▉

*First Name: ▉

*Address: ▉

Address 2:

*City: ▉

*State: ▉

*Zip Code: ▉

*Country: ▉

Date of Birth:  *Format: MM/DD/YYYY*

Soc. Sec. #

HICN: (Medicare #)

Date of Death:  *Format: MM/DD/YYYY*

Phone:

*Email Address: ▉

*Retype Email Address: ▉

Occupation: PSYCHIATRIST

City Employee?  ○ Yes  ⦿ No  ○ NA

Gender  ⦿ Male  ○ Female  ○ Other

○ Attorney is filing.

**Attorney Information (If claimant is represented by attorney)**

+Firm or Last Name:

+Firm or First Name:

+Address:

Address 2:

+City:

+State:

+Zip Code:

Tax ID:

Phone #:

+Email Address:

+Retype Email Address:

**The time and place where the claim arose**

*Date of Incident: 03/27/2025  *Format: MM/DD/YYYY*

Dismissal Date:  (Police related claims only)

Time of Incident: 10:00 PM  *Format: HH:MM AM/PM*

*Location of Incident: ▉

Address:

Address 2:

City: NEW YORK

*State: NEW YORK

Borough: MANHATTAN (NEW YORK)

* *Denotes required fields.*
+ *Denotes field that is required if attorney is filing.*
*A Claimant OR an Attorney Email Address is required.*

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

### NOTICE OF CLAIM

#### Pursuant to General Municipal Law §50-e

TO:
Office of the Comptroller of the City of New York
1 Centre Street, Room 1225
New York, NY 10007

AND TO:
New York City Administration for Children's Services
150 William Street
New York, NY 10038

AND TO:
New York City Law Department – Office of the Corporation Counsel
100 Church Street
New York, NY 10007

PLEASE TAKE NOTICE that the undersigned claimants hereby make claim and serve notice of claim for damages against THE CITY OF NEW YORK, the NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, and their agents, servants, and employees, as follows:

**1. NAME AND ADDRESS OF CLAIMANTS**



**2. ATTORNEYS FOR CLAIMANTS (if applicable)**

Pro Se

**3. TIME, PLACE, AND MANNER IN WHICH THE CLAIM AROSE**

Date and Time: March 27, 2025, approximately 10:00 p.m.

Location: 

**4. NATURE OF CLAIM**

This is a claim for damages arising from the unconstitutional and unlawful physical examination of Claimants' minor child (age 3 years) by employees of the New York City

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

Administration for Children's Services ("ACS") on March 27, 2025. Said examination occurred:

a) Without parental consent;

b) Without court authorization or other legal authority;

c) Under false pretenses and through active misrepresentation;

d) In the absence of any emergency circumstances justifying such intrusion; and

e) Mere hours after the death of Claimants' infant child, during a period of acute family grief and trauma.

The claim includes causes of action for:

1. Violation of constitutional rights under the Fourth Amendment (unreasonable search);

2. Violation of constitutional rights under the Fourteenth Amendment (parental rights and due process);

3. Violation of New York State Constitution, Article I, §12;

4. Violation of civil rights pursuant to 42 U.S.C. §1983;

5. Intentional infliction of emotional distress;

6. Invasion of privacy;

7. Negligent hiring, training, and supervision;

8. Other related causes of action as the investigation may reveal.

## 5. FACTUAL ALLEGATIONS

On the morning of March 27, 2025, Claimants' infant son, ███████ tragically and unexpectedly passed away. That same day, ACS personnel arrived at the Claimants' temporary residence in New York City to initiate a child protective investigation.

During this period of profound family grief, the ACS supervisor and accompanying caseworker represented to Ms. █████ that they merely intended to "say goodbye" to Dr. █████ knowing that he was upstairs in a private room with their surviving three-year-old son. Ms. █████ permitted this limited interaction solely due to the misrepresentation of their intentions.

Immediately prior to entering the room, the supervisor explicitly instructed the caseworker—within audible range of Ms. █████—to "search his body." At no juncture did ACS personnel request or receive consent for such examination, nor did they advise either parent of their intention to conduct a physical inspection of the child. It merits emphasis that the child was not in any danger, was fully clothed, and was in the direct care and supervision of his father.

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

The caseworker thereupon proceeded to execute a physical examination of the child's body absent legal authority, parental consent, prior notice, or necessity. This conduct was invasive, wholly unjustified, and constitutes a clear violation of established constitutional protections, statutory provisions, and relevant case law.

### 6. INJURIES AND DAMAGES

As a direct and proximate result of the wrongful acts and omissions of Respondents and their agents, Claimants and their minor child have suffered:

1. Violation of constitutional and civil rights;
2. Emotional distress, anxiety, and psychological harm;
3. Interference with family integrity and parental authority;
4. Loss of trust in government agencies and personnel;
5. Exacerbation of grief during a period of family bereavement;
6. Other damages to be demonstrated at trial.

### 7. RESPONDENTS

The following parties are responsible for the damages sustained by Claimants:

1. The City of New York;
2. New York City Administration for Children's Services;
3. ACS Supervisor 'V Byers, Supervisor' (individual and official capacity);
4. ACS Caseworker Michael Shannon (individual and official capacity);
5. John and Jane Does 1–10 (unidentified ACS staff, supervisors, or administrators who participated in or failed to prevent the conduct)

### 8. WITNESSES

1. Dr. ▮▮▮▮▮ (Claimant/Father)
2. Ms. ▮▮▮▮▮ (Claimant/Mother)
3. ▮▮▮▮▮ (Minor Witness)
4. ACS Supervisor 'V Byers'
5. ACS Caseworker Michael Shannon
6. Additional witnesses to be identified during discovery

### 9. DEMAND

By reason of the foregoing, Claimants demand damages in an amount to be determined at trial, but not less than $25,000,000, plus attorneys' fees, costs, interest, and such other relief as the court deems just and proper.

PLEASE TAKE FURTHER NOTICE that unless this claim is adjusted and paid within

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)

the time provided by law, Claimants intend to commence legal action to recover damages.

Dated: New York, New York
April 2, 2025

Respectfully submitted,

Claimants (Pro Se)

**Exhibit D:** Notice of Claim filed with NYC Comptroller and Notification to ACS (4/2/2025)



015 - 151

www.comptroller.nyc.gov

**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

———————————————

**Brad Lander**
**COMPTROLLER**

Date:      4/3/2025
Claim Number: 2025PI013219
RE:       Acknowledgment of Claim
Your Claim/Policy#:



Dear Claimant:

   We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

   We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

   If you have any questions regarding your claim, you may contact us at 212-669-4729 for claims involving personal injury.

   If you need to communicate in a language other than English, please let us know, and we will make translation services available to you.

Sincerely,

Bureau of Law & Adjustment

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



Phone Calls Made to Ms. S.C. while Downstairs Temporary Residence

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



Voicemail left for Ms. S.C. on 4/22/2025, despite Ms. King speaking with family Counsel starting on 4/11/2025

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



Multiple calls and voicemails were also left for Dr. S.C., most recently on 4/22/2025, despite Ms. King speaking with family Counsel starting on 4/11/2025

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



Dr. S.C. called Ms. King twice on the morning of 4/11/2025 before engaging counsel later that day in an attempt to resolve matters. Despite stating "I will call back…" Ms. King never did until over a week later after she had already spoken with counsel.

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



During this same exchange on 4/11/2025, Ms. King claimed "I handed a brochure to each of you," a claim directly contradicted by contemporaneous video review showing that Dr. S.C., who was holding his child in one hand and a notepad in the other, received no such materials.

**Exhibit E:** Ms. King's phone and text records to Dr. and Ms. S.C. (4/7/2025-4/22/2025)



This final text from Dr. S.C. to Ms. King before engaging counsel summarizes the pattern of conduct that persisted throughout ACS's guerilla-style engagement with a family in acute grief.